## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 20-396 T
(Judge David A. Tapp)

DOUGLAS L. WALLIS and MELISSA M. WALLIS,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Douglas L. Wallis and Melissa M. Wallis (hereinafter "Plaintiffs") file this lawsuit for refund against the United States of America (hereinafter "United States," "US" or Defendant") and alleges, by and through their attorney of record, Kathryn N. Magan, as follows:

### JURISDICTION AND VENUE

1.      This is a suit arising under Federal Law and is a claim for the recovery of federal income tax and interest erroneously paid by the taxpayer or assessed and wrongfully collected by the Internal Revenue Service (hereinafter "IRS"). A civil action for remedy of such damages is authorized under 28 U.S.C. § 1346(a)(1), 28 U.S.C. § 1491(a) and 26 U.S.C. § 7422.

2.      Plaintiffs are filing this complaint within the period of time specified in 28 U.S.C. § 2501.

### PARTIES

3.      Plaintiffs, Douglas L. Wallis and Melissa M. Wallis, are individuals who are Australian Nationals, and were U.S. taxpayers who at all relevant times are current in their tax filings.

4.      The Defendant is the United States of America.

## BACKGROUND

5.      The U.S. Social Security Administration's 2010 publication titled "Social Security Programs Throughout the World" analyzes Australia's overall comprehensive social security system. The publication identifies the 1908 Pensions Act and the 1942 Widows' Pensions Act as the first set of laws that formed Australia's first social security system.  The current regulatory framework of Australia's overall comprehensive social security system is the 1991 Social Security Act, the 1992 Superannuation Guarantee Administration Act, and the 1999 New Tax System Family Assistance Act 1999.

6.      The 1991 Social Security Act provides the traditional, minimal, and basic means-tested social assistance, but it also introduced the concept of "superannuation guarantees" to replace the general social security contributions that started with the 1945 Social Services Contribution Act.[1]  The 1999 Superannuation Guarantee Administration Act mandated compulsory employer contributions to state-mandated occupational pensions that are privately managed.  Under current Australian law, employers must contribute 9.5% of an employee's salary to state-mandated occupational pension funds called "superannuation funds."  These state-mandated employer contributions are referred to as the "superannuation guarantee."

7.      Additional employee contributions to superannuation funds are optional, but, when contributed, they are treated no different; fully preserved, restricted, and inaccessible until retirement. Therefore, regardless of whether the contribution is a "superannuation guarantee" or a "concessional contribution," they both form a part of the same fully preserved and restricted fund.  There are no longer any social security contributions to publicly managed social security accounts in Australia due

---

[1] See Australia Social Security Act, Section 9(1).

to Amending Acts from 1945 to 1969 and the final 2014 Repeal Act; they have been entirely replaced by the superannuation guarantee. This represents the privatization of Australia's traditionally government-run social security pensions.

8.     There are various types of superannuation schemes identified in the 1991 Social Security Act, including, but not limited to, public sector funds established for federal and state government employees, corporate funds established by medium to large private sector companies for their employees, industry or multi-employer funds, retail fund or public offer funds, and self-managed superannuation funds.

9.     Australia's current social security system has two components: a means-tested Age Pension funded through general revenue; and the superannuation guarantee funded through compulsory employer contributions to state-mandated superannuation funds, which are similar to compulsory contributions under the U.S. Federal Insurance Contributions Act.[2] This is supported by a report published by the United States Congress Joint Committee on Taxation, which stated, "The social security system in Australia is comprised of two tiers. The first tier is called the 'age pension' benefit and the second tier is called the 'superannuation guarantee.'"[3]

10.     In Australia, the Superannuation Guarantee Act of 1992 was adopted in recognition of the fact that Australia, along with many other industrialized nations, had and would continue to experience significant increases to life expectancy due to advances in the field of medicine, which would slowly make their social security system insolvent over time. The proposed solution was the

---

[2] *See* IRC §§ 3101, 3111. Because Superannuation Guarantee contributions are effectively a social security tax collected by the employer and contributed to the superannuation fund, it is not includible in the employee's gross income for U.S. federal income tax purposes. However, voluntary contributions made by the employee remain a part of the employee's U.S. gross income if not otherwise excludible on other grounds.

[3] *See* Analysis Of Issues Relating To Social Security Individual Private Accounts Scheduled For A Public Hearing Before The Senate Committee On Finance On March 16, 1999, JCX- 14-99 (1999). One federal court case also recognized superannuation as social security in dicta. *See McCubbin v. McCubbin*, No. 06-4110-CV-C-NKL, (W.D. Mo. June 28, 2006) ("Before she left Australia, Sheree McCubbin cashed out her Superannuation fund, a kind of social security fund.")

privatization of their social security system that included a very basic need-based age pension system that served as a safety net, private savings generated by state-mandated employer contributions to a superannuation fund that served as the centerpiece of the privatization proposal, and the option for voluntary quasi-after-tax contributions to a superannuation fund.

11.     Australian superannuation funds can most aptly be characterized as state-mandated occupational pensions with the primary purpose of providing for benefits at retirement, and it is specifically recognized as social security by the U.S. Social Security Administration.[4]  Furthermore, a state-mandated "occupational pension scheme" fits the precise definition of social security according to the Organization for Economic Cooperation and Development ("OECD").[5]  Under Australian law, any contribution to an Australian superannuation fund is inaccessible until death, disability, or retirement; a classic trait of traditional, publicly-managed social security.  Even the International Social Security Association, of which Australia and the United States are members, also recognizes Australian Superannuation as forming part of Australia's overall comprehensive social security system.[6]

12.     Therefore, based on the foregoing substantial and compelling authorities, it is indisputable that Australian Superannuation Funds are privatized social security accounts forming a part of Australia's overall comprehensive social security system.

13.     Moreover, the United States signed the *Totalization Agreement with Australia* that went into effect on October 1, 2002, which specifically recognizes "superannuation guarantee" contributions as being social security contributions since the funds are part of Australia's larger,

---

[4] *See* Social Programs Throughout the World, U.S. Social Security Administration's Office of Retirement and Disability Policy, http://www.ssa.gov/policy/docs/progdesc/ssptw/2010-2011/asia/australia.html (Sep. 1, 2015); *also see* Individual Accounts in Other Countries, U.S. Social Security Administration's Office of Policy, http://www.ssa.gov/policy/docs/ssb/v66n1/v66n1p31.html (Sep. 1, 2015).
[5] *See* 2014 OECD Commentary, Art. 18, ¶ 10.
[6] *See* Social Security Country Profiles, International Social Security Association, https://www.issa.int/countrydetails?countryId=AU&regionId=ASI (Sep. 1, 2015).

comprehensive national social security system.[7]  In essence, by covering superannuation contributions under the U.S.-Australia Social Security Totalization Agreement, U.S. federal law recognized that Australian superannuation funds are privatized social security accounts.

14.      If both the U.S. and a treaty partner were members of the OECD when a treaty was drafted, U.S. courts are legally bound to mandatorily refer to OECD commentary, which is published every four years, to interpret terms in that income tax treaty.[8]  The United States joined the OECD in 1961 while Australia joined in 1971.  The U.S.-Australia Income Tax Treaty was signed in 1982 and went into effect in 1983 with an amending protocol signed in 2001.  Therefore, U.S. courts are legally bound to defer to the OECD with regard to interpreting treaty terms, which promotes international consistency.

15.      According to the OECD, the term "social security" generally "refers to a system of mandatory protection that a State puts in place in order to provide its population with… retirement benefits."[9]  However, the OECD Model Income Tax Treaty does not specifically cover social security; it merely suggests that "payments under a social security system… could fall under Article 18, 19 or 21," which reference pensions from government service, private sector service, or other income, respectively.[10]  On the other hand, the U.S.-Australia Income Tax, unlike the OECD Model Income Tax Treaty, *does* specifically have a provision addressing taxing rights with regard to social security.

---

[7] "For Australia, the agreement covers Superannuation Guarantee (SG) contributions that employers must make to retirement plans for their employees."  Totalization Agreement with Australia, SSA Publication No. 05-10176 (2004). However, according to a vague IRS Chief Counsel Memorandum, Australian superannuation funds may be treated like any other private retirement plan.  *See* IRS CCA 200604023 (October 24, 2005).  However, the Chief Counsel Memorandum made an inexplicable leap in logic by assuming that an Australian superannuation fund is simply a private pension without any legal analysis whatsoever.  It is, quite simply, unauthoritative and unreliable given its extremely poor legal approach to a complex international legal issue.
[8] *See Podd v. C.I.R.*, 76 T.C.M. 906 (1998) (citing *U.S. v. A.L. Burbank & Co.*, 525 F.2d 9, 15 (2d Cir. 1975); *North W. Life Assurance Co. of Canada v. C.I.R.*, 107 T.C. 363 (1996); *Taisei Fire & Marine Ins. Co. v. C.I.R.*, 104 T.C. 535, 546 (1995) (construing the Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, Mar. 8, 1971, U.S.-Japan, 23 U.S.T. 969, with reference to the Model Treaty and its commentary)).
[9] *See* 2014 OECD Commentary, Art. 18, ¶ 28.
[10] *See* 2014 OECD Commentary, Art. 15, ¶ 2.14.

Nevertheless, the OECD commentary broadly interprets "payments under a social security *system*" to include payments under a "worker's compensation fund," which is not considered "social security" in the United States. Moreover, the OECD has impliedly recognized Australian superannuation as a part of Australia's social security system.[11]

16.     Therefore, the OECD takes a very broad and inclusive approach as to what constitutes "social security" under international treaty law, which the U.S. is legally bound to recognize.

17.     Under domestic U.S. tax law, with regard to informational reporting requirements for contributions to a nonqualified deferred compensation plan, Congress specifically exempted contributions to a foreign social security account.[12] This clearly evidences Congressional intent to disregard contributions to foreign social security for U.S. informational reporting purposes on IRS Form 3520 and 3520-A.[13] Moreover, the IRS has specifically stated that, under domestic U.S. tax law, "foreign social security benefits… are taxable as annuities."[14] Gains within annuities are tax-deferred until the contract annuitizes and payments begin or when the owner cashes out the annuity and takes a lump sum.[15] Although the IRS has issued private letter rulings that classify superannuation funds as foreign trusts, the rulings did not indicate which country they are analyzing and also specifically stated

---

[11] *See* Pensions at a Glance 2013: County Profiles - Australia, OECD, http://www.oecd.org/els/publicpensions/PAG2013-profile-Australia.pdf (Sep. 1, 2015). Although the report refers to superannuation as a private pension, it is referring to the fact that it is privately managed. For example, in the same report analyzing the U.S. social security system, it refers to social security as a "publicly provided pension benefit" since it is managed and provided by the government. *See* Pensions at a Glance 2013: County Profiles - United States, OECD, http://www.oecd.org/els/public-pensions/PAG2013-profile-United-States.pdf (Sep. 1, 2015). It is important to keep in mind that the purpose of the OECD publication is to analyze each country's social security system and distinguishes between government-mandated programs and voluntary retirement savings.

[12] *See* Treas. Reg. § 1.409A-1(a)(3)(iv).

[13] *See Dominion Res., Inc. v. U.S.*, 681 F.3d 1313 (Fed. Cir. 2012) (Treasury cannot interfere with the unambiguously expressed intent of Congress).

[14] *See* IRS Publication 17, Page 84; *also see* The International Tax Gap Series, "Most income tax treaties have special rules for social security payments. In many cases, foreign social security payments are taxable by the country making the payments. Unless specified otherwise in an income tax treaty, foreign social security pensions are generally taxed as if they were foreign pensions or foreign annuities. Unless a tax treaty allows it (see, e.g., the USA-Canada treaty), they are not eligible for exclusion from taxable income the way a U.S. social security pension might be." https://www.irs.gov/businesses/the-taxation-of-foreign-pension-and-annuity-distributions

[15] *See* IRC § 72.

that the IRS is making "no determination concerning whether [the taxpayers] are entitled to any benefits… under the income tax treaty."[16]   Furthermore, the rulings' conclusions clearly state that the ruling is "based solely on facts submitted," and the facts submitted had stated that the fund was "organized as a trust," which prevented the IRS from ruling otherwise.

18.      Although many practitioners have asserted that Australian superannuation funds are reportable as foreign grantor trusts on IRS Forms 3520 and 3520-A, doing so would subject the gains within the fund to immediate U.S. taxation, which is contrary to IRS guidance.[17]   However, because gains will still be subject to U.S. taxation at maturity of the Australian superannuation fund based on disability or retirement, one must still consider the application of the U.S.-Australia Income Tax Treaty and the outcome thereunder.[18]

19.      Under Article 18, Paragraph 2, of the U.S.-Australia Income Tax Treaty, "social security payments and other public pensions paid by one of the Contracting States to an individual who is a resident of the other Contracting State or a citizen of the United States shall be taxable *only* in the first-mentioned State."   In other words, the country of *source* has exclusive taxing rights to social security income.   With regard to an Australian superannuation fund, Australia would have exclusive taxing rights to the income.

20.      With regard to treaty claims by U.S. citizens and U.S. tax residents, however, one must consider the application of the Saving Clause, which allows the United States to "tax its residents…

---

[16] *See* PLRs 201538008, 201538007, 201538006, 200807003.   Numerous countries offer "superannuation funds" that very greatly from state-mandated to voluntary participation.   The characteristics vary greatly between countries.

[17] If Australian superannuation funds were foreign pension plans, they would certainly be subject to reporting on IRS Forms 3520 and 3520-A.   However, being social security, they are not subject to reporting since they constitute foreign social security, which is taxable in the same manner as an annuity in accordance with IRS Publication 17.

[18] Even the IRS issued a revenue ruling indicating that due regard must be given to an applicable income tax treaty to determine whether foreign social security is exempt from U.S. tax.   *See* Rev. Rul. 66-34.   Therefore, any assertion that the U.S. would not acknowledge a foreign social security system contradicts the fact that it's addressed in more than 60 bilateral income tax treaties and specifically required in accordance with the aforementioned revenue ruling as well as Treasury regulations.   *See* Treas. Reg. § 1.894-1 ("Income of *any kind* is not included in gross income and is exempt from tax… to the extent required by any income tax convention to which the United States is a party.").

[and] citizens as if this Convention had not entered into force."[19]  Put plainly, the U.S. may disregard most treaty claims made by U.S. citizens and U.S. tax residents.  Notably, the Saving Clause is merely a reserved right and does not automatically apply to prevent claims by U.S. citizens and U.S. tax residents.[20]  The Saving Clause, however, has a few specifically enumerated exceptions; one of which is claims made by U.S. citizens and U.S. tax residents pursuant to Article 18, Paragraph 2, which covers social security gains and reserves exclusive taxing rights to the country of source.[21]  Therefore, the Saving Clause is inapplicable to claims by U.S. citizens and U.S. tax residents with regard to gains, distributions, or any other income associated with an Australian superannuation fund.  Even the plain language of Article 18, Paragraph 2, unmistakably allows U.S. citizens to make claims under that provision.[22]

21.     I.R.C. § 6114 requires any person relying on a tax treaty to disclose such position on his or her federal income tax return unless an exception applies.[23]  IRS Form 8833 is used to make a disclosure regarding a treaty-based return position.[24]  A separate form is required for each treaty-based return position taken by the taxpayer.  If the treaty position results in no taxation whatsoever, then IRS Form 8833 must be filed along with a federal income tax return that only includes the taxpayer's name, address, taxpayer identification number, and signature under the penalty of perjury.  This effectively creates a *de facto* treaty election procedure.

22.     If a taxpayer "fails in a material way to disclose one or more" treaty-based return positions, then a penalty is imposed on each separate payment of income or article of income even if

---

[19] *See* U.S.-Australia Income Tax Treaty, Art. 1, ¶ 3.
[20] *See* Technical Explanation of the U.S.-Australia Income Tax, Art. 1, ¶ 3.
[21] *See* U.S.-Australia Income Tax Treaty, Art. 1, ¶ 4(a).
[22] "Social security payments and other public pensions paid by one of the Contracting States to an individual who is a resident of the other Contracting State or a citizen of the United States shall be taxable only in the first-mentioned State." U.S.-Australia Income Tax Treaty, Art. 18, ¶ 2.
[23] *See* 26 U.S.C. § 6114.
[24] *See* Treas. Reg. § 301.7701(b)-7.

"received from the same" payor.[25]   For individuals, there is a $1,000 penalty for each non-disclosure.[26]

23.     There are several items for which reporting is specifically waived.[27]   A position by a taxpayer that a treaty reduces or modifies the taxation of income from social security or other public pensions is exempt from disclosure regardless of the amount.[28]

24.     Furthermore, payments or the rights to receive social security benefits, the foreign equivalent of social security, or another similar program of a foreign government are not specified foreign financial assets subject to reporting on IRS Form 8938 or FinCEN Form 114.[29]

25.     Because social security income is taxable only in the country of source under the U.S.-Australia Income Tax Treaty, and, in this case, gains within and distributions from Australian superannuation funds should constitute income from privatized social security accounts, Australia would have exclusive taxing rights over the gains within and distributions from the Australian superannuation fund.  The United States is estopped from imposing taxation on Australia-sourced social security income in accordance with Article 18, Paragraph 2, of the U.S.-Australia Income Tax Treaty.

26.     Moreover, because treaty positions with regard to social security income are exempt from disclosure, the treaty position is not required to be disclosed on IRS Form 8833. Lastly, because social security is not required to be reported on IRS Form 8938 or FinCEN Form 114, and, in this case, Australian superannuation funds should be characterized as privatized social security funds, the Australian superannuation fund is not required to be reported on IRS Form 8938 or FinCEN Form 114.

---

[25] *See* Treas. Reg. § 301.6712-1(a).
[26] *See* Treas. Reg. § 301.6114-1(a)(1)(ii).
[27] *See* Treas. Reg. § 301.6114-1(c)(1)-(8).
[28] *See* Treas. Reg. § 301.6114-1(c)(1)(iv).
[29] *See* Treas. Reg. § 1.6038D-3; 31 C.F.R. § 1010.350; also see "FATCA – FAQs General," Internal Revenue Service, http://www.irs.gov/Businesses/Corporations/Frequently-Asked-Questions-FAQs-FATCA--Compliance-Legal (Sep. 1, 2015).

## FACTUAL ALLEGATIONS

27.     Plaintiffs, Douglas L. Wallis and Melissa M. Wallis, are Australian Nationals who were living and working in the United States as a Vice President of Global Contracts for CR Mining Equipment USA, LLC on L1 Visas until May 31, 2019.

28.     Plaintiffs filed Form 1040 U.S. Income Tax Return for tax year 2017 on October 26, 2018, attached hereto as Exhibit A.

29.     The original income tax for the tax year 2017 was paid to the IRS in the amount of $66,651.00.

30.     It came to Plaintiffs' attention that portions of their 2017 tax return was prepared incorrectly, and Plaintiffs overestimated their income tax for the same. As such, Plaintiffs erroneously overpaid their income tax for tax year 2017. At this time, Plaintiffs reached out to Castro & Co., LLC to review their 2017 tax return and to prepare an amended return.

31.     In reviewing Plaintiffs' tax return, Castro & Co., LLC found that Plaintiffs included gains within their Australian Privatized Social Security Funds, also known as Australian Superannuation Funds, which are excludable from U.S. Taxation pursuant to Article 18, Paragraph 2, of the U.S.-Australia Income Tax Treaty.

32.     On or about June 19, 2019, Plaintiffs timely filed their 2017 Form 1040X U.S. Amended Income Tax Return, which claimed a refund in the amount of $11,087.00, attached hereto as Exhibit B.

33.     On or about August 15, 2019, Plaintiffs received a letter from the IRS requesting them to sign the declaration attached with their original signatures in order for them to continue processing their 2017 amended return, attached hereto as Exhibit C.

34.     On or about September 13, 2019, Plaintiffs signed said declaration with their original signatures and mailed the statement to the IRS, attached hereto as Exhibit D.

35.     Plaintiffs would show that because social security income is taxable only in the country of source under the U.S.-Australia Income Tax Treaty, --in this case, gains within and distributions from Australian superannuation funds should constitute income from privatized social security accounts-- Australia would have exclusive taxing rights over the gains within and distributions from the Australian superannuation fund.  The United States is prohibited from imposing taxation on Australia-sourced social security income in accordance with Article 18, Paragraph 2, of the U.S.-Australia Income Tax Treaty.

36.     Plaintiffs would also show their 1040X Amended U.S. Income Tax Return for tax year 2017 was timely filed and does not exceed the statute of limitations to file a claim for refund pursuant to 26 U.S.C. § 6511.

37.     Additionally, Plaintiffs would show that Plaintiffs' claim for refund was made in good faith for the overpayment of income tax in tax year 2017.

## COUNT I
### (Civil Action for Refund 28 U.S.C. § 1346, 28 U.S.C. § 1491 & 26 U.S.C. § 7422)

38.     Plaintiffs incorporate paragraphs 1-37 as if fully set forth herein.

39.     The actions of the United States of America have resulted in damages to Plaintiffs for not remitting Plaintiffs' income tax refund for the overpayment of income taxes due from including their Australian Superannuation Funds for tax year 2017, and in bringing and pursing this cause of action; and renders the United States of America liable for compensatory damages and costs of this action under 28 U.S.C. § 1346, 28 U.S.C. § 1491, and 26 U.S.C. §7422.

## DAMAGES

40.     Plaintiffs seek recovery of their tax refund for tax year 2017 in the amount of $11,087.00, allowed by law as established in 28 U.S.C. § 1346, 28 U.S.C. § 1491 and 26 U.S.C. § 7422.

41.     Plaintiffs seek recovery of the interest accrued from the filing of Plaintiffs' claim of

refund for tax years 2017 to the present for the overpayment of Plaintiffs' income tax as contemplated under 26 U.S.C. § 6611.

42.       Plaintiffs seek recovery of attorney's fees and costs incurred in bringing and pursuing this action as contemplated in 26 U.S.C. § 7430 and 28 U.S.C. § 2412.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs Douglas L. Wallis and Melissa M. Wallis request:

(a)       That this Court order the IRS to refund to Plaintiffs the overpayment of taxes for tax year 2017 in the amount of $11,087.00, together with interest from and after June 19, 2019, the date when Plaintiffs demanded the return of their overpayment of taxes;

(b)       In the alternative, that this Court award to Plaintiffs damages in the amount of $11,087.00, together with interest from and after June 19, 2019;

(c)       Any other I.R.C. § 6621(d) interest netting benefit to which Plaintiffs may be entitled after all adjustments to the tax periods involved have been made;

(d)       Such costs and attorneys' fees as are available; and

(e)       Such other and further relief that this Court deems equitable and proper.

## PRAYER

WHEREFORE, Plaintiffs herein respectfully pray that the United States of America be cited to appear and answer, and that upon final trail hereof, that Plaintiffs be awarded the relief requested above, together with costs of court and such other relief to which Plaintiffs may be entitled.

Respectfully submitted,

Dated: April 7, 2020

*Kathryn Magan*
KATHRYN MAGAN
Texas Bar No. 24107854
**Magan Law, PLLC**
K.Magan@maganlawpllc.com
6051 Davis Blvd.
P.O. Box 820415
North Richland Hills, Texas 76180
Tel. (469) 550-0036

**ATTORNEY FOR PLAINTIFFS**